1  Robert Sibilia, Esq.
   Oceanside Law Center APC
2  28202 Cabot Road, Ste. 300
   Laguna Niguel, CA  92677
3  T: (760) 666-1151
   F: (818) 698-0300
4  *Attorneys for Plaintiff*

5

6  **UNITED STATES DISTRICT COURT**

7  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8

9  SON KIM, on behalf of himself and all    )    Case No.  3:23-cv-6632
   others similarly situated,                )
10                            Plaintiff       )    **CLASS ACTION COMPLAINT**
                                              )
11         vs.                                )    **JURY TRIAL DEMANDED**
                                              )
12  SHOE PALACE CORPORATION,                  )
                                              )
13                            Defendant       )
   _____        )

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

1.      Plaintiff SON KIM ("Plaintiff"), on behalf of himself and others similarly situated, asserts the following claims against SHOE PALACE CORPORATION ("Defendant") as follows.

2.      Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

3.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

4.      "Being unable to access website puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).

5.      Plaintiff is a blind, visually impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

6.      Plaintiff requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

7.      Plaintiff, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this Class Action to secure redress against Defendant SHOE PALACE CORPORATION ("Defendant"), for its failure to design, construct, maintain, and operate its website to be fully and equally accessible to and independently usable by Plaintiff and other blind or visually-impaired people.

Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiffs' rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

8.     Plaintiff brings this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

9.     Because Defendant's website, www.shoepalace.com, (the "Website" or "Defendant's website"), is not fully or equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

(a)     that SHOE PALACE CORPORATION retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so the goods and services on them may be equally accessed and enjoyed by individuals with vision related disabilities;

(b)     that SHOE PALACE CORPORATION work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis, including onsite training to create accessible content at the design and development stages;

(c)     that SHOE PALACE CORPORATION work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether SHOE PALACE CORPORATION's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

(d)     that SHOE PALACE CORPORATION work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether SHOE PALACE CORPORATION's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

(e)     that SHOE PALACE CORPORATION work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and tollfree phone number to report accessibility-related problems; and

(f)     that Plaintiff, their counsel and its experts monitor Defendant's Website for up to two years after the Mutually Agreed Upon Consultant validates it is free of accessibility errors/violations to ensure SHOE PALACE CORPORATION  has adopted and implemented adequate accessibility policies.

10.    Web-based technologies have features and content that are modified on a daily, and in some instances, an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## THE PARTIES

11.     Plaintiff, at all relevant times, is and was a resident of Alameda County, California. Plaintiff is a legally blind, visually impaired handicapped person, and member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq.

12.     Defendant is and was at all relevant times a California Corporation doing business in California, including operating 16 stores located within 25 miles of the Plaintiff. Defendant conducts a large amount of its business in California. Defendant's stores are public accommodations within the definition Title III of the ADA, 42 U.S.C. §12181(7). Defendant's Website is a service, privilege, or advantage of its services, products and locations.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

14.     Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Northern District of California that caused injury and violated rights the ADA and UCRA prescribe to Plaintiff and to other blind and other visually impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services of Defendant's physical locations and/or Website in Alameda County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from visiting Defendant's brick-and mortar physical locations, which Plaintiff intends to do once the Website is accessible to all. Similarly, the access barriers Plaintiff has encountered on Defendant's website have impeded Plaintiff's full

and equal enjoyment of goods and services offered at Defendant's brick-and mortar stores.

15. This Court also has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the State of California, County of Alameda, and because Defendant's offending website is available across California.

16. Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

17. The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

18. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

19. This lawsuit is aimed at providing legally blind users like the Plaintiff a full and equal experience.

<u>STANDING</u>

20. Plaintiff SON KIM, is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

21. Consumers such as the Plaintiff may purchase Defendant's products and access other brand related content and services at www.shoepalace.com ("Website"), the Website Defendant owns, operates, and controls.

CLASS ACTION COMPLAINT

22.   In addition to researching and purchasing Defendant's products and services from the comfort and convenience of their homes, consumers may also use Defendant's Website to sign up to receive product updates, discounts, product news, and receive special promotions not available elsewhere.

23.   Plaintiff was injured when he attempted on October 30, 2023 and again on November 3, 2023 to access Defendant's Website from his home in an effort to shop for Defendant's products, as well as determine if these products were available in stores near him, but encountered barriers that denied him full and equal access to Defendant's online goods, content and services.

24.   Specifically, the Plaintiff wanted to purchase the Air Jordan 2 Retro Black Cement Mens Lifestyle Shoes.

25.   Plaintiff's desire for this product was due to the fact that he wanted to buy a new pair of branded footwear, that could be suitable for both sports and casual outfits.

26.   This Website and physical store holds themselves out as a platform specializing in athletic footwear, apparel, and accessories. The website is known for its diverse selection of brands and products, carrying exclusive items and latest trends in athletic footwear and apparel. Therefore, Plaintiff desired to buy footwear from the Website and/or the physical store.

27.   Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website, and was thus denied the benefit of purchasing the Air Jordan 2 Retro Black Cement Mens Lifestyle Shoes, he wished to acquire.

28.   The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers.

29.   Plaintiff has been, and in absence of an injunction will continue to be injured by Defendant's failure to provide its online content and services in a manner that is compatible with screen reader technology.

30.     Because of Defendant's denial of full and equal access to and enjoyment of the good, benefits and services of the Website, Plaintiff has suffered an injury in fact due to his inability to acquire the Air Jordan 2 Retro Black Cement Mens Lifestyle Shoes, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

31.     Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to purchase products and services the Website offers, and more specifically the Air Jordan 2 Retro Black Cement Mens Lifestyle Shoes, if remedied.

## **NATURE OF ACTION**

32.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually impaired persons alike.

33.     In today's tech-savvy world, blind and visually impaired people have the ability to access website using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually impaired persons are unable to fully access websites, and the information, products, goods and services contained thereon.

34.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. One such program is NonVisual Desktop Access, better known as "NVDA."

35.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

36.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making website accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their website are accessible.

37.     Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.     A text equivalent for every non-text element is not provided;

b.     Title frames with text are not provided for identification and navigation;

c.     Equivalent text is not provided when using scripts;

d.     Forms with the same information and functionality as for sighted persons are not provided;

e.     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.     Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.     If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.     Web pages do not have titles that describe the topic or purpose;

i.     The purpose of each link cannot be determined from the link text

alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDFs); and,

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

38.      Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate

whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changes in a meaningful manner that will cause the Website to remain accessible, the Website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

39.     Each of Defendant's violations of the Americans with Disabilities Act is likewise a violation of the Unruh Civil Rights Act. Indeed, the Unruh Civil Rights Act provides that any violation of the ADA constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f).

40.     Further, Defendant's actions and inactions denied Plaintiff full and equal access to their accommodations, facilities, and services. A substantial motivating factor for Defendant to deny Plaintiff access was the perception of Plaintiff's disability. Defendant's denial of Plaintiff's accessibility was a substantial motivating factor for Defendant's conduct. Plaintiff was harmed due to Defendant's conduct.  Defendant's actions and inactions were a substantial factor in causing the lack of access to Plaintiff. Unruh Civil Rights Act. Cal. Civ. Code, § 51.

## STATEMENT OF FACTS

41.     Defendant is a footwear store that offers the website www.shoepalace.com to the public. The Website offers features which should allow all consumers to access the goods and services offered in connection with its physical locations. The goods and services offered by Defendant include, but are not limited to the following: footwear and accessories; the ability to find store locations, access information about order status, returns, discounts, shipping and delivery options, and other products and services that are available for purchase online and in store locations.

42.     It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually impaired users, access to Defendant's Website, and to therefore specifically deny the goods and services that are offered and

integrated with Defendant's stores. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's stores and the numerous goods, services and benefits offered to the public through its website.

43.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet. Plaintiff has visited the Website October 30, 2023 and again on November 3, 2023 using a screen-reader.

44.    Plaintiff intended to purchase the Air Jordan 2 Retro Black Cement Mens Lifestyle Shoes.

45.    Plaintiff's desire for this product was due to the fact that he wanted to buy a new pair of branded footwear, that could be suitable for both sports and casual outfits.

46.    On October 30, 2023 and again on November 3, 2023 Plaintiff visited Defendant's website, www.shoepalace.com, to purchase the Air Jordan 2 Retro Black Cement Mens Lifestyle Shoes. Despite his efforts, however, Plaintiff was denied a shopping experience similar to that of a sighted individual due to the website's lack of a variety of features and accommodations, which effectively barred Plaintiff from having an unimpeded shopping experience.

47.    Additionally, during Plaintiff's visits to the Website, Plaintiff encountered multiple access barriers that denied him full and equal access to the facilities, goods and services offered by Defendant to the public. Plaintiff was thus unable to: learn about store locations and hours and contact information; make an online purchase, determine prices for and availability of certain products, and related goods and services available both online and in stores.

48.    Due to Defendant's failure to build its website in a manner that is compatible with screen reader programs, Plaintiff is and was unable to understand, and

thus is denied the benefit of, much of the content and services he wishes to access or use. For example:

(a)    Many features on the Website lacks alt. text, which is the invisible code embedded beneath a graphical image. As a result, Plaintiff was unable to differentiate what products were on the screen due to the failure of the Website to adequately describe its content.

(b)    Many features on the Website also fail to Add a label element or title attribute for each field. This is a problem for the visually impaired because the screen reader fails to communicate the purpose of the page element. It also leads to the user not being able to understand what he or she is expected to insert into the subject field.

(c)    The Website also contains a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered.

49.    As a result of visiting Defendant's Website and from investigations performed on his behalf, Plaintiff is aware that the Website includes at least the following additional barriers blocking his full and equal use:

(a)    The Website does not provide a text equivalent for every non-text element;

(b)    The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(c)    Web pages lack titles that describe their topic or purpose;

(d)    Headings and labels do not describe topic or purpose;

(e)    Keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible;

(f)    The default human language of each web page cannot be programmatically determined;

(g)     The human language of each passage or phrase in the content cannot be programmatically determined;

(h)     Labels or instructions are not always provided when content requires user input;

(i)     Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(j)     A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

(k)     A correct reading sequence is not provided on pages where the sequence in which content is presented affects its meaning;

(l)     In content implemented using markup languages, elements do not always have complete start and end tags, are not nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(m)     The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

50.     Due to the inaccessibility of Defendant's Website, blind and visually impaired individuals such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public through its website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting the Website in order to perform functions equal to the sighted.

51.     These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's physical locations and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's stores on its website and other important information, preventing Plaintiff from visiting the locations to take advantage of the goods and services that it provides to the public.

52.     If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.  In fact, Plaintiff intends to return to the Website when it is equally accessible for visually-impaired consumers in order to complete his intended transaction, as it is more convenient for Plaintiff to access the Website to make a purchase than to travel to a physical location to make the same purchase.  However, as long as the Access Barriers continue to exist on the Website, Plaintiff is prevented from making such a purchase.

53.     These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter him from attempting to use the Website and/or visit Defendant physical stores. Still, Plaintiff would like to, and intends to, attempt to access Defendant's Website in the future to research the services the Website offers, or to test the Website for compliance with the ADA.

54.     Due to Defendant's failure and refusal to remove access barriers to its Website, Plaintiff and visually impaired persons have been and are still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through its website.

55.     Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually impaired people.

56.     Though Defendant may have centralized policies regarding the maintenance and operation of its Website, upon and information and belief, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

57.     The law requires that Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers

1  identified above is readily achievable and may be carried out without much difficulty
2  or expense.

3      58.    Plaintiff's above request for injunctive relief is consistent with the work
4  performed by the United States Department of Justice, Department of Transportation,
5  and U.S. Architectural and Transportation Barriers Compliance Board (the "Access
6  Board"), all of whom have relied upon or mandated that the public-facing pages of
7  website complies with an international compliance standard known as Web Content
8  Accessibility Guidelines version 2.1 AA ("WCAG 2.1 AA"), which is published by an
9  independent third party known as the Worldwide Web Consortium ("W3C").

10     59.    Plaintiff and the Class have been, and in the absence of an injunction will
11 continue to be, injured by Defendant's failure to provide its online content and services
12 in a manner that is compatible with screen reader technology.

13     60.    Defendant has long known that screen reader technology is necessary for
14 individuals with visual disabilities to access its online content and services, and that it
15 is legally responsible for providing the same in a manner that is compatible with these
16 auxiliary aids.

17     61.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks
18 in this action. In relevant part, the ADA requires:

19     62.    In the case of violations of . . . this title, injunctive relief shall include an
20 order to alter facilities to make such facilities readily accessible to and usable by
21 individuals with disabilities . . . Where appropriate, injunctive relief shall also include
22 requiring the . . . modification of a policy . . .
23 42 U.S.C. § 12188(a)(2).

24     63.    Plaintiff alleges violations of existing and longstanding statutory and
25 regulatory requirements to provide auxiliary aids or services necessary to ensure
26 effective communication, and courts routinely decide these types of matters.

27     64.    Resolution of Plaintiff's claims does not require the Court to unravel
28 intricate, technical facts, but rather involves consideration of facts within the

conventional competence of the courts, e.g. (a) whether Defendant offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

65.    Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Website, thereby violating their rights.

## CLASS ACTION ALLEGATIONS

66.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

67.    Common questions of law and fact exist amongst the Class, including:

(a)    Whether Defendant's Website is a "public accommodation" under the ADA;

(b)    Whether Defendant's Website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, thereby violating the ADA.

68.    Plaintiff's claims are typical of the Class. The Class, like Plaintiff, are visually impaired or otherwise blind, and claim that Defendant has violated the ADA by failing to remove access barriers on its Website so it can be independently accessible to the Class.

69.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to Class Members.

70.    Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable

to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.

71.   Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

72.   Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits throughout the United States.

## FIRST CAUSE OF ACTION

### Violations of the ADA, 42 U.S.C. § 12181 *et seq.*

73.   Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74.   Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

75.   No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

76.   Defendant's physical locations are a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

77.   Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or

benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

78.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

79.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

80.    [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

81.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. § 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has not been provided any reasonable accommodation to those services. Defendant has

1    failed to take any prompt and equitable steps to remedy its discriminatory conduct.

2    These violations are ongoing.

3        82.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set

4    forth and incorporated therein, Plaintiff, requests relief as set forth below.

5                    **SECOND CAUSE OF ACTION**

6    **Violations of the Unruh Civil Rights Act, California Civil Code § 51 et seq.**

7        83.    Plaintiff, on behalf of himself and the Class Members, repeats and

8    realleges every allegation of the preceding paragraphs as if fully set forth herein.

9        84.    Defendant's locations are "business establishments" within the meaning

10   of the California Civil Code § 51 et seq.  Defendant generates millions of dollars in

11   revenue from the sale of its services in California through its store's locations and

12   related services and www.shoepalace.com is a service provided by Defendant that is

13   inaccessible to customers who are visually-impaired like Plaintiff and Class Members.

14   This inaccessibility denies visually-impaired customers full and equal access to

15   Defendant's facilities and services that Defendant makes available to the non-disabled

16   public. Defendant is violating the Unruh Civil Rights Act, California Civil Code § 51

17   et seq., in that Defendant is denying visually impaired customers the services provided

18   by www.shoepalace.com. These violations are ongoing.

19       85.    Defendant's actions constitute intentional discrimination against Plaintiff

20   and Class Members on the basis of a disability in violation of the Unruh Civil Rights

21   Act, Cal. Civil Code § 51 et seq. in that: Defendant has constructed a website that is

22   inaccessible to Plaintiff and Class Members; maintains the website in this inaccessible

23   form; and has failed to take adequate actions to correct these barriers even after being

24   notified of the discrimination that such barriers cause.

25       86.    Defendant is also violating the Unruh Civil Rights Act, California Civil

26   Code § 51 in that the conduct alleged herein likewise constitutes a violation of various

27   provisions of the ADA, 42 U.S.C. § 12101 et seq. Section 51(f) of the California Civil

28

Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

87.    The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code § 51 et seq., and, therefore, Plaintiff and Class Members are entitled to injunctive relief remedying the discrimination.

88.    Plaintiff and Class Members are also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense.

89.    Plaintiff and Class Members are also entitled to reasonable attorneys' fees and costs.

90.    Plaintiff and Class Members are also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act, California Civil Code § 51 et seq., and requiring Defendant to take the steps necessary to make www.tadashishoji.com readily accessible to and usable by visually-impaired individuals.

### THIRD CAUSE OF ACTION

### DECLARATORY RELIEF

91.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.* prohibiting discrimination against the blind.

93.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

1

## PRAYER FOR RELIEF

2  WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

3      94.     A Declaratory Judgment that at the commencement of this action SHOE

4  PALACE CORPORATION was in violation of the specific requirements of Title III of

5  the ADA described above, and the relevant implementing regulations of the ADA, in

6  that SHOE PALACE CORPORATION took no action that was reasonably calculated

7  to ensure that its website is fully accessible to, and independently usable by, individuals

8  with visual disabilities;

9      95.     A preliminary and permanent injunction pursuant to 42 U.S.C. §

10  12188(a)(1) and (2) and section 52.1 of the California Civil Code enjoining Defendant

11  from violating the Unruh Civil Rights Act and ADA and requiring Defendant to take

12  the steps necessary to make www.shoepalace.com readily accessible to and usable by

13  visually-impaired individuals;

14      96.     An award of costs and expenses of this action;

15      97.     An award of statutory minimum damages of $4,000 per offense per person

16  pursuant to section 52(a) of the California Civil Code.

17      98.     For attorneys' fees and expenses pursuant to California Civil Code §§

18  52(a), 52.1(h), and 42 U.S.C. § 12205; An order certifying the Class under Fed. R. Civ.

19  P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his

20  attorneys as Class Counsel; and

21      99.     Such other and further relief as this Court deems just and proper.

22

23

## JURY DEMAND

24      Plaintiff, on behalf of himself and all others similarly situated, hereby demands

25  a jury trial for all claims so triable.

26  ///

27  ///

28  ///

- 21 -

CLASS ACTION COMPLAINT

1

2

3  Dated: December 26, 2023

4                                                           Respectfully Submitted,

5                                                           Oceanside Law Center APC

6                                                           /s/Robert Sibilia, Esq.

7                                                           Robert Sibilia, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT